IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KIMBERLEY A. ROBINSON,                    :
                                          :
          Plaintiff,                      :
                                          :
     v.                                   :
                                          :
COUNTRYWIDE HOME LOANS, INC.,             :   CIVIL ACTION NO. 2:08-cv-01563
COUNTRYWIDE HOME LOANS SERVICING          :
LP, and BANK OF NEW YORK AS TRUSTEE       :
FOR THE CERTIFICATEHOLDERS OF             :
CWMBS 2005-R1                             :
                                          :
          Defendants.                     :

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), defendants Countrywide Home Loans, Inc., Countrywide Home Loans Servicing LP (collectively "Countrywide"), and Bank of New York as Trustee for the Certificateholders of CWMBS 2005-R1 ("BNYTC"), by their undersigned counsel, respectfully submit this memorandum of law in support of their motion to dismiss plaintiff's second amended complaint.

## I.    INTRODUCTION

In her second amended complaint, plaintiff *still* fails to state a claim for relief against defendants, despite the fact that plaintiff has now had the benefit of a full record of discovery in the state court foreclosure action, and two opportunities to amend her complaint in the instant action.  In fact, the second amended complaint differs very little from the original and first amended complaints.  Given that plaintiff has had every conceivable advantage and opportunity to try to state a claim against defendants, and yet still has been unable to do so, it should be obvious by now that she *cannot* do so.

The second amended complaint again asserts various common law claims, as well as claims under the Pennsylvania Unfair Trade Practices and Consumer Protection Act (the "UTPCPL"), 73 P.S. § 201-2, *et seq.*  The gravamen of all of these claims is that, prior to the commencement of the foreclosure action against plaintiff, defendants improperly rejected a payment that plaintiff made in November 2006 that plaintiff alleges was sufficient to reinstate her loan.  If this case goes beyond the pleadings stage, defendants will prove that plaintiff's November 2006 payment was *not* sufficient to reinstate her loan.

But this case should not go beyond the pleadings stage.  Plaintiff's common law fraud and UTPCPL claims fail as a matter of law because each of the alleged misrepresentations that form the basis for these claims either was not a misrepresentation at all, or plaintiff has not pled – other than in a conclusory way – the element of reasonable reliance with respect to the misrepresentation.  Plaintiff asserts claims for breach of contract and intentional interference with contractual relations, but these claims fail because plaintiff has pled no facts to support her conclusory assertions that there was a contractual breach in this case.  Plaintiff also asserts claims for intentional infliction of emotional distress, but these claims fail because they are based solely on plaintiff's conclusory assertions that defendants engaged in extreme and outrageous conduct.  The *factual* allegations of the complaint – which are the only allegations that the Court should credit – do not allege any conduct on the part of defendants remotely close to the sort of extreme and outrageous conduct that would be required for an intentional infliction of emotional distress claim.

The majority of plaintiff's claims also fail because plaintiff has not alleged that she suffered any recoverable damages as a result of defendants' alleged conduct.  Plaintiff complains that defendants tried to charge her unwarranted fees and expenses when she tried to

reinstate her loan, but she does not allege that she ever paid such fees and expenses because she

in fact did not.  Moreover, far from having suffered any damages, plaintiff has gained a windfall

from the events alleged in the second amended complaint because she stopped making payments

on her loan almost three years ago, and yet she has continued to live that entire time in the house

that is subject to the mortgage on which she defaulted.

Just this week, the United States Supreme Court reemphasized that district court

judges must weed out claims on motions to dismiss when such claims, like those of plaintiff

here, are based on conclusory statements.  *Ashcroft v. Iqbal*, 2009 WL 1361536 (U.S. May 18,

2009).  As the Supreme Court explained, Federal Rule of Civil Procedure 8 "does not unlock the

doors of discovery for a plaintiff armed with nothing more than conclusions."  *Id.* at 13.  Here,

the claims asserted in the second amended complaint consist of nothing but conclusory legal

assertions and otherwise meritless allegations.  The second amended complaint should therefore

be dismissed.

## II.    RELEVANT ALLEGATIONS OF SECOND AMENDED COMPLAINT

### A.    Factual Background

Plaintiff is the borrower on a residential mortgage loan.  (Sec. Am. Compl. ¶ 5).

BNYTC is the mortgagee on the loan, and Countrywide is the servicer for the loan.  (*Id.* ¶ 7).

Plaintiff admits that, in June 2006, she "fell behind" in her loan payments.  (*Id.*

¶ 8).  Under the mortgage, an event of default results upon plaintiff's "fail[ure] to pay in full any

monthly payment" in a timely manner.  (Mortg. ¶ 9).[1]  Thus, even viewing the allegations of the

---

[1]    A copy of plaintiff's mortgage is attached hereto as Exhibit 1.  It is appropriate for the Court to consider the terms of plaintiff's mortgage on this motion.  As this Court has explained, on a motion to dismiss under Rule 12(b)(6), a court may consider a document "referred to in the complaint, but not attached," when the document is "'integral to and explicitly relied upon' in the complaint."  *Jackson v. CIT Group/Consumer Finance, Inc.*,

(continued...)

second amended complaint in a light most favorable to plaintiff, plaintiff was in default under the mortgage as of June 2006.  A default under plaintiff's mortgage entitles the mortgagee to accelerate the debt, and to commence foreclosure proceedings on the mortgage.  (Mortg. ¶¶ 9, 18).

As plaintiff alleges, the mortgage gave her a right to "reinstate" her loan following her default.  (Mortg. ¶ 10).  The mortgage is explicit that, "[t]o reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding." (*Id.*).

As plaintiff further alleges, in August 2006, she contacted Countrywide and expressed a desire to reinstate her loan.  (Sec. Am. Compl. ¶ 9).  She was given a reinstatement figure of $3,001.80, but rather than pay that amount, she tendered a reinstatement payment in the amount of $1,366.22.  (*Id.*).  Because her payment was less than the amount required to reinstate, the payment was returned to her.  (*Id.*).

In November 2006, plaintiff again contacted Countrywide and expressed a desire to reinstate her loan.  (*Id.* ¶ 10).  On November 15, 2006, Countrywide sent a letter to plaintiff, a copy of which is attached as Exhibit A to plaintiff's second amended complaint, setting forth the amounts then due on her loan, which totaled $4,535.13.  Contrary to plaintiff's allegations, the

_____
(...continued)
2006 WL 3098767, *3 n.3 (W.D. Pa. Oct. 30, 2006) (quoting *In re Burlington Coat Factory Secs. Litg.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).  Here, plaintiff's second amended complaint repeatedly alleges that Countrywide violated her rights under the mortgage.  (*See, e.g.*, ¶¶ 12, 19, 40, 55.)  Accordingly, the mortgage is plainly integral to plaintiff's claims, and may be considered by the Court on this motion.

November 15 letter did *not* advise plaintiff that she had until "the end of the month" to pay the $4,535.13. (*Compare* Sec. Am. Compl. ¶ 13 *with* Sec. Am. Compl. Exh. A).[2]  In fact, immediately after setting forth $4,535.13 as the total amount then due, the November 15 letter explicitly stated:  "Additional fees and costs may continue to accrue in connection with any delinquent payment until the account is paid current."  (Sec. Am. Compl., Exh. A).  The November 15 letter additionally explained that "foreclosure proceedings may begin" in the event payments were ninety (90) days delinquent.  (*Id.*).  The letter also advised plaintiff that her account information could be viewed at https://customers.countrywide.com, and provided her with an 800-phone number in the event she needed further assistance.

On November 27, 2006, plaintiff sent Countrywide a payment in the amount of $4,535.14.  (Sec. Am. Compl. ¶ 15).  Nowhere in the second amended complaint does plaintiff allege that, prior to mailing this payment, she made any effort to check whether the $4,535.14 figure was still sufficient to reinstate her loan.  As plaintiff does allege, in November 2006, Countrywide was in the process of referring plaintiff's loan to foreclosure (*Id.* ¶ 12), which, by that time, had been in default for approximately six months.  By letter dated November 29, 2006, Countrywide returned plaintiff's $4,535.14 to her, explaining that one of the reasons it was returned was that the payment was not enough to cure the default.  (Sec. Am. Compl., Exh. B).  The letter also invited plaintiff to call Countrywide to discuss her account further.  (*Id.*).

Plaintiff contacted Countrywide to inquire why her reinstatement payment had been rejected, and she was advised that the amount required to reinstate her loan was $6,630.95, which included additional attorneys' fees and legal costs associated with the foreclosure that

---

[2]      It is well-settled that when a document attached to a complaint contradicts an allegation of the complaint, the document controls.  *See Bowser v. Blair County Children and Youth Servs.,* 346 F. Supp. 2d 788, 796 (W.D. Pa. 2004).

were not included in the prior figure.  (Sec. Am. Comp. ¶ 19).  Plaintiff did not pay this amount,

and BNYTC thereafter commenced a foreclosure action against plaintiff in the Court of

Common Pleas for Allegheny County.  (*Id.* ¶ 20).[3]

B.    **Plaintiff's Claims**

In her second amended complaint, plaintiff again purports to assert claims for

intentional infliction of emotional distress against Countrywide and BNYTC (Counts I and V),

claims for violation of the UTPCPL against Countrywide and BNYTC (Counts II and VI),

claims for fraudulent misrepresentation/fraud against Countrywide and BNYTC (Counts III and

VII), a claim for breach of contract against BNYTC (Count VIII), and a claim for intentional

interference with contractual relations against Countrywide (Count IV).

Plaintiff's claims are largely premised on the assumption that the $4,535.14

payment that plaintiff made on November 27, 2006 was sufficient to reinstate her loan, and that

she did not properly owe the additional amounts that defendants attempted to charge her over

and above the $4,535.14 amount.

Thus, plaintiff's fraud claims (Counts III and VII) allege three separate purported

misrepresentations.  First, plaintiff alleges that Countrywide's November 15, 2006 letter to

plaintiff "offer[ed] to reinstate her mortgage loan if she paid $4,535.13 by the end of the month,"

when this statement was in fact false because Countrywide knew that it intended to reject

plaintiff's payment even if plaintiff complied with Countrywide's instructions so that defendants

could commence foreclosure proceedings and try to charge plaintiff additional alleged

unjustified and unsupported fees and charges.  (Sec. Am. Compl. ¶ 13; *see also id.* ¶¶ 38, 53).

---

[3]    Pursuant to an agreement by the parties, the Court in the foreclosure action has stayed
proceedings therein pending the outcome of the instant action.

Second, plaintiff alleges that Countrywide's November 29, 2006 letter to plaintiff contained misrepresentations in that it told plaintiff that her $4,535.14 payment was either insufficient in amount, or inadequate because it was not in certified funds, when in fact the payment was adequate.  (*Id.* ¶¶ 16-17, 39, 54).   Third, plaintiff alleges that she contacted Countrywide in December 2006, and Countrywide "falsely informed her that the payment required to reinstate the mortgage was $6,630.95," when in fact she did not owe that amount because that amount included additional fees and expenses that she alleges were not chargeable to her.  (*Id.* ¶¶ 19, 40, 55).[4]   Plaintiff's fraud claim against BNYTC alleges one additional misrepresentation.  Plaintiff alleges that, at the time BNYTC commenced the foreclosure lawsuit against plaintiff, BNYTC "willfully misrepresented to the Court and [plaintiff] that it [*i.e.*, BNYTC] had been assigned the mortgage security interest.  In fact, [BNYTC] was not to be assigned the mortgage security interest till some seven (7) months later . . . ."  (Sec. Am. Compl. ¶ 56).  Plaintiff's UTPCPL claims (Counts II and VI) appear to be based on these same alleged misrepresentations.  (*Id.* ¶¶ 34-35, 50-51).

Plaintiff's breach of contract claim (Count VIII) alleges that BNYTC breached the mortgage by rejecting her $4,535.14 payment without cause (Sec. Am. Compl. ¶ 60),[5] and plaintiff's intentional interference with contractual relations claim (Count IV) alleges that Countrywide induced BNYTC's contractual breach by deciding to foreclose even though

---

[4]     Plaintiff now further alleges that she would have paid to reinstate the loan in December 2006 if these amounts had not been charged to her.  (Sec. Am. Compl. ¶ 35).

[5]     Plaintiff further alleges that Countrywide's November 15, 2006 letter to plaintiff constituted "a contractual offer to [plaintiff] which she accepted upon the tender of payment pursuant to the terms of the November 15, 2006 letter.  In rejecting said payment, [BNYTC] breached its contractual duties to [plaintiff] arising out of the November 15, 2006 letter."  (Sec. Am. Compl. ¶ 62).

plaintiff's $4,535.14 payment allegedly was sufficient to reinstate the loan.  (*Id.* ¶ 44).  Finally, plaintiff's intentional infliction of emotional distress claims (Counts I and V) allege that defendants' alleged conduct, including their decision to foreclose even though plaintiff allegedly tendered a sufficient amount to reinstate her loan, inflicted severe emotional distress on plaintiff. (*Id.* ¶¶ 29-30, 47-48).

## III.    ARGUMENT

"A complaint may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) if it does not allege 'enough facts to state a claim to relief that is plausible on its face.'" *D.V. v. Miller,* 2008 WL 4816484, at *2 (W.D. Pa. Nov. 4, 2008) (quoting *Ehrhecort v. Verizon Wireless*, 2008 U.S. Dist. LEXIS 73416, at *3 n.1 (W.D. Pa. Sept. 25, 2008) (citing *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007)).  "A claim for relief under Federal Rule of Civil Procedure 8(a)(2) 'requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Twombly*, 127 S.Ct. at 1965).  "A plaintiff must aver sufficient factual allegations in order 'to raise a right to relief above the speculative level.'"  *Id.* (quoting *Ayers v. Osram Sylvania, Inc.*, 2008 U.S. Dist. LEXIS 72644, at *6 (M.D. Pa. Sept. 24, 2008) (citing *Twombly*, 127 S.Ct. at 1965)).  "A Court is not required to consider legal conclusions, rather, it should determine whether the plaintiff should be permitted to offer evidence in support of the allegations."  *Id.*

Just this week, the United States Supreme Court reaffirmed the pleading standards it articulated in *Twombly*.  *Ashcroft v. Iqbal*, 2009 WL 1361536 (U.S. May 18, 2009).  In *Ashcroft*, the Supreme Court clarified that "[o]ur decision in *Twombly* expounded the pleading standard for 'all civil actions'. . . ."  *Id.* at *16 (quoting Fed. R. Civ. P. 1).  Echoing the principles originally set forth in *Twombly*, the Supreme Court in *Ashcroft* explained that Federal Rule of

Civil Procedure 8 "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* at *12. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at *13. The Supreme Court further explained that Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* In fact, district courts should begin their analysis of a claim on a motion to dismiss "by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.*

> **A.      Plaintiff's UTPCPL And Fraud Claims Fail Because Plaintiff Has Not Adequately Pleaded – Nor Can She – That Defendants Made Any Material Misrepresentations To Her Or That She Relied To Her Detriment On Any Such Alleged Misrepresentations**

Plaintiff's UTPCPL claims are asserted under 73 P.S. § 201-2(4)(xxi), which is the "catch-all" provision of the UTPCPL. (Sec. Am. Compl. ¶¶ 33, 50).[6] Section 201-2(4), in addition to enumerating twenty specific practices that are prohibited by the UTPCPL, provides in the catch-all provision that "engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding" constitutes an "unfair or deceptive act or practice." 73 P.S. § 201-2(4)( xxi).

The Pennsylvania Superior Court has held that: "In order to establish a violation of this catchall provision, 'a plaintiff must prove all of the elements of common-law fraud.'" *Colaizzi v. Beck*, 895 A.2d 36, 39 (Pa. Super. 2006) (quoting *Sewak v. Lockhart*, 699 A.2d 755, 761 (Pa. Super. 1997)). "In turn, to establish common-law fraud, a plaintiff must prove," among

---

[6]      Paragraphs 33 and 50 of the second amended complaint actually cite to 73 P.S. § 201-2(4)(xvii), which is the subsection wherein the catch-all provision previously was codified. However, the allegations of paragraphs 33 and 50 otherwise track the language of the catch-all provision, and defendants therefore assume that plaintiff intended to assert her UTPCPL claims under the catch-all provision, and that her citation to subsection (xvii) was in error.

other elements, a "misrepresentation of a material fact." *Colaizzi*, 895 A.2d at 39.  Thus, this Court has specifically held that a claim under UTPCPL catch-all provision requires proof of a misrepresentation of material fact. *See Grimm v. Discover Fin. Servs.*, 2008 WL 4821695, at *15 (W.D. Pa. Nov. 4, 2008) ("In order to recover under the UTPCPL, a plaintiff must have suffered a loss *as a result of* justifiably relying upon a false misrepresentation"); *Cehula v. Janus Distributors, LLC*, 2008 U.S. DIST. LEXIS 56406, at *25 n.27 (W.D. Pa. Jul. 23, 2008) ("even if a less restrictive standard of proof were adopted" for claim under UTPCPL catch-all provision, "it would still involve a misrepresentation on the part of a defendant.").

In addition, common law fraud requires proof of justifiable reliance. *See Colaizzi*, 895 A.2d at 39 (fraud claim requires "justifiable reliance by the party defrauded upon the misrepresentation").  Likewise, as the Third Circuit Court of Appeals recently confirmed, a claim under the UTPCPL catch-all provision also requires proof of justifiable reliance. *Hunt v. United States Tobacco Co.*, 538 F.3d 217, 224 (3d Cir. 2008) ("we conclude that private plaintiffs alleging deceptive conduct under [the UTPCPL's] post 1996 catchall provision must allege justifiable reliance.").  Thus, both plaintiff's UTPCPL claims and fraud claims depend on proof of a misrepresentation of a material fact, and justifiable reliance by plaintiff on the misrepresentation.

As discussed previously, the second amended complaint appears to allege three purported misrepresentations by defendants.  One of these alleged misrepresentations fails as a matter of law because it is based on a demonstrably incorrect reading of a letter sent by Countrywide to plaintiff, a copy of which is attached to plaintiff's own second amended complaint.  Furthermore, plaintiff has failed to adequately allege justifiable reliance with respect to all three alleged misrepresentations.

With respect to the first alleged misrepresentation, plaintiff alleges that Countrywide's November 15, 2006 letter to plaintiff "offer[ed] to reinstate her mortgage loan if she paid $4,535.13 by the end of the month," when this statement was in fact false because Countrywide knew that it intended to reject plaintiff's payment even if plaintiff complied with Countrywide's instructions.  (Sec. Am. Compl. ¶ 13; *see also id.* ¶¶ 35, 38, 53).  However, the November 15, 2006 letter, which is attached to the second amended complaint as Exhibit A, does not say what plaintiff alleges it says.  The November 15 letter merely contains a breakdown of the amounts then due on plaintiff's account, and immediately thereafter explicitly states that "[a]dditional fees and costs may continue to accrue in connection with any delinquent payment until the account is paid current," and further states that "foreclosure may begin" on a loan as delinquent as plaintiff's was.  The letter plainly does **not**, as plaintiff alleges, offer "to reinstate her mortgage loan if she paid $4,535.13 by the end of the month."[7]  Because the November 15, 2006 letter does not contain the alleged misrepresentation that plaintiff alleges it contains, plaintiff cannot base her UTPCPL or fraud claims on that letter.

Second, plaintiff alleges that Countrywide's November 29, 2006 letter to plaintiff contained misrepresentations in that it told plaintiff that her $4,535.14 payment was either

---

[7]     The second amended complaint further alleges that, in addition to the purported misrepresentation by defendants in the November 15, 2006 letter, "[a]t various times in November, 2006 . . . Countrywide willfully and intentionally misrepresented to Robinson their willingness to accept the amount of $4,535.13 in full reinstatement of her mortgage loan. . . ."  (Sec. Am. Compl. ¶¶ 38, 53).  Plaintiff's allegation that defendants made misrepresentations "at various times" in November 2006, without any additional detail, plainly fails to meet the heightened pleading standard under Federal Rule of Civil Procedure 9(b) for fraud.  *See Square D Co. v. Scott Elec. Co.*, 2008 WL 2096890, at *2 (W.D. Pa. May 16, 2008) (explaining that Rule 9(b) requires allegations of fraud to set forth "the 'who, what, when, where and how'" of alleged misrepresentation) (quoting *Sun Co. Inc. (R & M) v. Badger Design & Constructors, Inc.*, 939 F. Supp 365, 369 (E.D. Pa. 1996)).

insufficient in amount, or inadequate because it was not in certified funds, when in fact the payment was adequate.  (*Id.* ¶¶ 16-17, 34, 54).  Even assuming for the sake of argument that defendants committed a misrepresentation in the November 29 letter when they told plaintiff that her $4,535.14 payment was inadequate, plaintiff fails to allege that she relied to her detriment in any way on this alleged misrepresentation.  Plaintiff does not, for example, allege that this alleged misrepresentation about the inadequacy of her payment induced her to send Countrywide a check for an amount *higher* than the $4,535.14 that she previously sent.  In reality, plaintiff did not change her position or rely in any way on Countrywide's statement that her payment was inadequate.  Given the absence of such reliance, plaintiff's UTPCPL and fraud claims cannot be based on the November 29, 2006 letter.

Third, plaintiff alleges that she contacted Countrywide in December 2006, and Countrywide "falsely informed her that the payment required to reinstate the mortgage was $6,630.95," when in fact she did not owe that amount because that amount included additional fees and expenses that allegedly were not chargeable to her.  (Sec. Am. Compl. ¶¶ 19, 35, 40).  Assuming, *arguendo*, that the $6,630.95 was a false statement of what plaintiff actually owed, plaintiff still does not allege how she detrimentally relied on this alleged misrepresentation.  Plaintiff does not allege that she went ahead and paid the $6,630.95 (or that she paid *any* amount) in response to being told that she owed $6,630.95.

The only factual theory of reliance advanced by plaintiff with respect to this alleged misrepresentation is that, "had Countrywide not falsely exaggerated the attorney fees and costs it attempted to pass on to" plaintiff by way of the $6,630.95 quote, she "would have resubmitted her reinstatement payment in an amount sufficient to reinstate her loan."  (Sec. Am.

Compl. ¶ 35).[8]  This theory of reliance, however, does not demonstrate that plaintiff relied *on the alleged misrepresentation*.  Rather, it demonstrates that plaintiff relied on her own belief that the alleged misrepresentation was false.  In other words, the alleged misrepresentation at issue is that Countrywide told plaintiff that she owed $6,630.95 when she really owed a lesser amount.  Plaintiff's decision not to make whatever in her view would have been a sufficient reinstatement payment was *not* because plaintiff was fooled into believing she owed $6,630.95 when she really owed less.  Quite to the contrary, plaintiff's decision not to make a reinstatement payment was based on plaintiff's belief that she did *not* owe the $6.630,95 amount she was being asked to pay.  Because UTPCPL and fraud claims require detrimental reliance *on the alleged misrepresentation* (rather than *on the plaintiff's belief that the alleged misrepresentation was false*), plaintiff's theory of reliance fails as a matter of law.  Moreover, because plaintiff's theory of reliance necessarily leads to the conclusion that plaintiff "knew" that the $6,630.95 quote constituted an alleged misrepresentation, her theory fails on that ground as well.  *See Cehula v. Janus Distributors, LLC*, 2008 WL 2890874, at *6 n.35 (W.D. Pa. Jul. 23, 2008) (plaintiff may not base UTPCPL claim on "allegedly fraudulent misrepresentation if he knows it to be false or if its falsity is obvious").

In sum, each of the alleged misrepresentations on which plaintiff attempts to base her UTPCPL and fraud claims are defective.[9]  For this reason as well, plaintiff's UTPCPL and fraud claims should be dismissed.

---

[8]     Plaintiff also has inserted a conclusory allegation in the second amended complaint that she "reasonably and justifiably relied on Countrywide's misrepresentations to her detriment and injury."  (Sec. Am. Compl. ¶ 35).  This allegation, as *Twombly* and *Ashcroft* instruct, is precisely the sort of legal conclusion that the Court should not credit.

[9]     As noted above, plaintiff alleges that BNYTC committed one additional misrepresentation.  Specifically, plaintiff alleges that BNYTC misrepresented that it had

(continued...)

**B.**     **Plaintiff's Breach Of Contract And Intentional Interference With Contractual Relations Claims Fail Because They Are Based On Conclusory Assertions Unsupported By Any Factual Averments**

As explained above, both plaintiff's breach of contract and intentional interference with contractual relations claims are premised on her contention that defendants improperly rejected plaintiff's $4,535.14 payment, which plaintiff alleges was sufficient to reinstate her loan.  Plaintiff's contention is based on her assumption that the additional amounts that defendants advised plaintiff she owed over and above the $4,535.14 amount "were not chargeable to [plaintiff], had not been incurred or paid and were in excess of what was allowable under the mortgage loan agreement and applicable HUD regulations."  (Sec. Am. Compl. ¶ 19).

Plaintiff provides no factual averments for her conclusory assertions that these additional amounts "were not chargeable" to her, and "had not been incurred or paid," and these allegations should therefore be rejected.  *Twombly*, 127 S.Ct. at 1965.  Also frivolous is plaintiffs' contention that defendants' effort to collect these charges from plaintiff violated the mortgage.  As discussed above, the mortgage gave BNYTC the specific right to recover "foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding" as part of any reinstatement payment.  (Mortg. ¶ 10).[10]

---

(...continued)
been assigned plaintiff's mortgage when BNYTC commenced its foreclosure action against plaintiff.  (Sec. Am. Compl. ¶ 56).  Yet again, plaintiff fails to allege how she relied in any way on this alleged misrepresentation by BNYTC, and this allegation therefore cannot support plaintiff's claims either.

[10]     Similarly deficient is plaintiff's attempt to base her contractual claims on defendants' alleged violations of certain HUD regulations.  As an initial matter, plaintiff fails to allege how the regulations give rise to any contractual right on her part on which she could base her contractual claims.  Nor can plaintiff base her breach of contract claim on her allegation that Countrywide's November 15, 2006 letter constituted the extension of

(continued...)

**C.      Plaintiff's Intentional Infliction Of Emotional Distress Claims Fail As A Matter Of Law Because Defendants' Alleged Conduct Does Not Even Approach The Sort Of Extreme And Outrageous Conduct Required For Such A Claim**

The tort of intentional infliction of emotional distress is perpetrated by "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another." *Taylor v. Albert Einstein Medical Center*, 754 A.2d 650, 652 (Pa. 2000) (quoting RESTATEMENT (SECOND) OF TORTS § 46(1)(1965)).  "It is for the court in the first instance to determine whether the conduct may reasonably be regarded so extreme as to permit recovery." *Salerno v. Philadelphia Newspapers, Inc.* 377 Pa. Super. 83, 91, 546 A.2d 1168, 1172 (1988). *Accord McComb v. Morgan Stanley & Co.*, 2007 WL 4150786, at *8 (W.D. Pa. Nov. 17, 2007). "[I]n Pennsylvania," intentional infliction of emotional distress "has been found to lie in only a limited number of cases." *Salerno*, 377 Pa. Super at 91-92, 546 A.2d at 1172.  "Cases which have found a sufficient basis for a cause of action of intentional infliction of emotional distress have had presented only the most egregious conduct." *Hoy v. Angelone*, 554 Pa. 134, 151, 720 A.2d 745, 754 (1998).  The tort is "reserved by the courts for only the most clearly desperate and ultra extreme conduct." *Id.* at 152.  Courts applying Pennsylvania law, including this Court, have routinely dismissed claims for intentional infliction of emotional distress at the pleadings

_____

(...continued)

"a contractual offer."  (Sec. Am. Compl. ¶ 62).  "The first essential in any contract is the existence of a promise or an offer to enter into a contract.  Such promise must be definite and certain. . . ."  *GMH Assocs. v. Prudential Realty Group*, 752 A.2d 889, 899 (Pa. Super. 2000) (quoting *Fahringer v. Strine Estate*, 420 Pa. 48, 59, 216 A.2d 82, 88 (1966)).  Here, the November 15, 2006 letter plainly did not contain any "definite and certain" offer to reinstate, but rather simply advised plaintiff as to the amount she owed on her account as of that date.

stage when the plaintiff's complaint alleged no facts to support a conclusion that the defendant engaged in extreme or outrageous conduct.[11]

Here, plaintiff has revised Counts I and V of the second amended complaint to allege that defendants inflicted severe emotional distress on her by "wrongfully den[ying] her the opportunity to reinstate her mortgage loan in November and December 2006" and by "wrongfully foreclosing" on the property in the expectation that the foreclosure would be unopposed and would result in sheriff's sale.  (Sec. Am. Compl. ¶ ¶ 27-28).  Even with these revisions, the intentional infliction of emotional distress claims are still based exclusively on the same conduct that forms the basis for plaintiff's *other* causes of action.  Pennsylvania courts have repeatedly rejected similar attempts by plaintiffs to bootstrap *other* causes of action into an intentional infliction of emotional distress claim when the plaintiff failed to allege facts demonstrating extreme or outrageous conduct on the part of the defendant.[12]

---

[11] *See, e.g., McComb v. Morgan Stanley & Co.,* 2007 WL: 4150786, at **8-9 (W.D. Pa. Nov. 19, 2007); *Gupta v. Sears, Roebuck and Co.*, 2007 WL 2253609, at **7-8 (W.D. Pa. Aug. 3, 2007), *McClain v. Munn*, 2008 WL 975059, at 5-6 (W.D. Pa. Apr. 9, 2008); *Jones v. City of Philadelphia*, 893 A.2d 837, 846 (Pa. Commw. Ct. 2006); *Reardon v. Allegheny College*, 926 A.2d 477, 488 (Pa. Super. 2007); *Swisher v. Pitz*, 868 A.2d 1228, 1231 (Pa. Super. 2005); *Morgenstern v. Fox Television Stations of Philadelphia*, 2008 WL 4792503, at *12 (E.D. Pa. Oct. 31, 2008); *McCracken v. Ford Motor Co.*, 2008 WL 4822057, at *6 (E.D. Pa. Oct. 4, 2008).

[12] *See, e.g.*, *Watson v. Abington Township*, 2005 WL 1875533, at *7 (E.D. Pa. Aug. 5, 2005) ("The only proof of outrageous conduct Plaintiffs provide are the actions at issue in the other torts. . . .  Without more, the [intentional infliction of emotional distress] claim cannot survive."), *aff'd in relevant part*, 478 F.3d 144 (3d Cir. 2007).  *See also Paul v. John Hancock Mut. Life Ins. Co.*, 1987 WL 15206, at *8 (E.D. Pa. Aug. 3, 1987) ("Even if plaintiff succeeds on his statutory claims, those violations would not ipso facto support his emotional distress claim.")  *See* also *LeCroy v. Dean Witter Reynolds, Inc.*, 585 F. Supp. 753, 766 (E.D. Ark. 1984) ("mere fraud . . . does not ipso facto make out a prima facie case for intentional infliction of emotional distress; unless defendant's acts are truly outrageous, an action for intentional infliction of emotional distress will not lie."); *Cloverleaf Development, Inc. v. Horizon Fin. F.A.*, 347 Pa. Super. 75, 85, 500 A.2d 163, 169 (1985) ("If Century improperly raised Cloverleaf's mortgage interest rate, that may

(continued...)

Moreover, plaintiff's allegation that the foreclosure action was wrongfully commenced against her is not sufficient to state a cause of action for intentional infliction of emotional distress in the absence of allegations of fact demonstrating extreme or outrageous conduct. *See Shrader v. Siana & Vaughan, LLP*, 2005 WL 975411, at *5 (E.D. Pa. Apr. 25, 2005) ("[T]he Court concludes that the allegation that defendants 'maliciously and wantonly' initiated and continued the Chester County action, considered alone, does not 'go beyond all possible bounds of decency.'"). *See also Kline v. City of Sunbury*, 2007 WL 3231959, at *4 (M.D. Pa. October 29, 2007) ("Kline has not alleged anything close to the extreme and outrageous conduct that would give rise to a claim for intentional infliction of emotional distress. Kline's allegations that the City designated his property a 'nuisance' without factual basis for doing so does not rise to the level of the few types of conduct Pennsylvania courts have found to provide the basis for an intentional infliction of emotional distress claim").

Here, once again, the second amended complaint does not allege any facts demonstrating extreme or outrageous conduct on the part of defendants.[13] There is no allegation,

_____

(...continued)

> have been a breach of the contract.  However, an attempt to increase the interest was not such outrageous conduct, so extreme and so excessive of decency, that it would support a separate cause of action for intentionally inflicted emotional distress."); *Wilkes v. State Farm Ins. Companies*, 2005 WL 1667396, at *4 (M.D. Pa. Jul. 15, 2005) (holding that, even were plaintiff to prevail on bad faith claim against insurer, "[w]e can envision no circumstances where [intentional infliction of emotional distress tort] would be occasioned by a denial of an insurance claim").

[13]     Plaintiff's mere branding of defendants' conduct in the second amended complaint as "outrageous" (¶¶ 31, 47), is, of course, not sufficient to state a claim for intentional infliction of emotional distress.  *See Haynes v. Logan Assistance Corp.*, 1990 WL 110014, at *5 (E.D. Pa. 1990) ("Although the federal pleading system is extremely liberal, there must be some factual basis for the claims made – bare legal conclusions that a defendant's conduct was extreme and outrageous, without more, cannot withstand a motion to dismiss.").

for example, that defendants sent agents to plaintiff's home to threaten her or to try to physically remove her from the premises.  Rather, the alleged misconduct by defendants – even assuming that it constituted some other actionable wrong (which defendants deny) – all took place in a civil and business-like manner.  Thus, as alleged in the second amended complaint, the relevant communications between defendants and plaintiff were limited to phone calls and correspondence.  There are no facts alleged to demonstrate that defendants engaged in any extreme and outrageous conduct during these communications.[14]  In short, plaintiff has come nowhere near meeting the stringent requirements of an intentional infliction of emotional distress claim.

**D.    Plaintiff's UTPCPL Claims, Fraud Claims, Breach Of Contract Claim, And Intentional Interference With Contractual Relations Claim All Fail Because Plaintiff Has Alleged No Damages That Can Be Recovered On These Claims**

The vast majority of plaintiff's claims also fail as a matter of law because plaintiff has alleged no damages that can be recovered on these claims.  It is axiomatic that plaintiff's UTPCPL claims, fraud claims, breach of contract claim, and intentional interference with contractual relations claim, each require proof of damages.[15]

---

[14]    In the second amended complaint, plaintiff has added allegations to her intentional infliction of emotional distress claim to the effect that Countrywide was motivated to commence the foreclosure action against plaintiff, rather than expend effort to work with her to reinstate, because Countrywide was compensated on a "flat fee" basis for servicing plaintiff's loan.  (Sec. Am. Compl. ¶ 27).  Even were it true that Countrywide was influenced by this alleged motive, that does not change the nature of the *conduct* in which defendants allegedly engaged.  The tort of intentional infliction of emotional distress requires extreme or outrageous *conduct*, and here, as explained above, no such conduct is alleged.

[15]    *See* 73 P.S. sec. 201-9.2 (UTPCPL claim requires plaintiff to prove "ascertainable loss of money or property, real or personal"); *Spang & Co. v. United States Steel Corp.*, 519 Pa. 14, 25, 545 A.2d 861, 866 (1988) ("the plaintiff in an action for breach of contract has the burden of proving damages resulting from the breach"); *Fletcher-Harlee Corp. v. Szymanski*, 936 A.2d 87, 100 (Pa. Super. 2007) (damage is required element of fraud

(continued...)

Here, even if plaintiff could establish defendants' liability on these claims (which plaintiff cannot), plaintiff has failed to allege that she suffered any recoverable damages on these claims.  Plaintiff complains that defendants initiated a foreclosure action against her, but the second amended complaint makes clear that she is still living in the house that is the subject of the foreclosure action.  (Sec. Am. Compl. ¶ 1).  Plaintiff further admits in the second amended complaint that she stopped making payments on her loan beginning in June 2006.  (Sec. Am. Compl. ¶ 8).  In sum, plaintiff continues to live in her house, **and has lived there rent-free for nearly three years**.  Thus, far from suffering any damages, plaintiff has received a windfall as a result of the events alleged in the amended complaint.  If any party has suffered damages, it is BNYTC, to which plaintiff has not made a single payment on her loan for nearly three years.

Plaintiff also alleges that defendants tried to overcharge her for certain legal fees and foreclosure costs when she attempted to reinstate her loan.  Even if the reinstatement amounts that defendants requested plaintiff to pay included overcharges (which they did not), **plaintiff never paid these amounts**.  Thus, although plaintiff complains that the reinstatement figure she was asked to pay in Countrywide's November 15, 2006 letter contained fees that were not justified or chargeable (Sec. Am. Compl. ¶ 13), plaintiff admits in the second amended complaint that the check that she sent which included payment for these fees was returned to her. (*Id.* ¶ 16).  Plaintiff further complains that the reinstatement figure she was quoted in December 2006 contained $1,690 in additional unjustified fees (*id.* ¶ 19), but nowhere does plaintiff allege that she paid these fees (which she in fact did not, thus resulting in the foreclosure lawsuit against her).

_____

(...continued)
claim); *Blackwell v. Eskin*, 916 A.2d 1123, 1128 (Pa. Super. 2007) (damage is required element of intentional interference with contractual relations claim).

The second amended complaint is devoid of any other allegations that could provide a basis for plaintiff to claim that she suffered pecuniary loss as a result of defendants' alleged conduct.  In fact, the only other basis for alleged damages in the second amended complaint are the allegations in plaintiff's claims for intentional infliction of emotional distress that defendants' alleged conduct "materially aggravate[ed] her psychological and cardiac condition" resulting in physical injury.  (Sec. Am. Compl. ¶¶ 30, 48).  Such damages, however, are not recoverable on plaintiff's other claims.[16]

## IV.    CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court grant their motion to dismiss, and dismiss all of plaintiff's claims in the second amended complaint.

Respectfully submitted,

/s/ Martin C. Bryce, Jr.
Martin C. Bryce, Jr., PA 59409

BALLARD SPAHR ANDREWS &          bryce@ballardspahr.com
INGERSOLL, LLP                            Joel E. Tasca, PA 81363 (admitted *pro hac vice*)
1735 Market Street, 51st Floor           tasca@ballardspahr.com
Philadelphia, PA  19103-7599             Sapna K. Anderson, PA 202109 (admitted *pro hac vice*)
Telephone: (215) 665-8500                andersonsk@ballardspahr.com
Facsimile:  (215) 864-8999

*Attorneys for Defendants*                Dated:  May 20, 2009

---

[16]     *See, e.g.*, *Krisa v. The Equitable Life Assurance Society*, 109 F. Supp. 2d 316, 323 n.5 (M.D. Pa. 2000) ("[B]ecause [the UTPCPL] requires an ascertainable loss of money or property and limits recovery to 'actual damages,' Krisa will not be entitled to recover emotional distress type damages under the UTPCPL") (internal quotation marks omitted); *In re Bryant*, 111 B.R. 474, 479-80 (E.D. Pa. 1990) ("Recovery for emotional distress is not permitted under" UTPCPL); *Rodgers v. Nationwide Mut. Ins. Co.*, 344 Pa. Super. 311 319, 496 A.2d 811, 815 (1985) ("damages for emotional disturbance are not ordinarily allowed in breach of contract cases"); *Tose v. First Pennsylvania Bank, N.A.*, 648 F.2d 879, 898 (3d Cir. 1981) (applying Pennsylvania law, and holding that plaintiff could not recover emotional distress damages alone on intentional interference with contractual relations claim).

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY THAT, on this 20th day of May, 2009, a true and correct copy of the foregoing Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint, and accompanying exhibit, were served via ECF filing and First Class Mail, postage prepaid, upon the following:

Ronald J. Fischer, Esquire
Anthony F. Jeselnik, Esquire
600 Grant Street, Room 1500
Pittsburgh, PA  15219-2800
(412) 433-2945
rjfischer@uss.com
afjeselnik@uss.com

*Attorneys for Plaintiff Kimberley A. Robinson*

*/s/ Joel E. Tasca*
Joel E. Tasca